United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 19, 2005**

Charles R. Fulbruge III
Clerk

**REVISED OCTOBER 17, 2005**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 04-10919

_____

In The Matter Of : VANCE COLE CHESNUT

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK T. BROWN; TEMPLETON MORTGAGE CORP.,

Appellees,

versus

VANCE COLE CHESNUT

Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The Bankruptcy Code's automatic stay is designed to ensure the orderly distribution of assets

by temporarily protecting the property of the debtor's estate from the reach of creditors. A willful

violation of the stay occurs when a creditor, with knowledge of the stay, seizes the debtor's property

without first obtaining relief from the stay from the bankruptcy court. Here, we face the question

whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right (hereafter, "arguable property"). We answer in the affirmative, reverse the district court, affirm the judgment of the bankruptcy court, and remand to that court for further proceedings.

I.

This case arises out of the foreclosure of a 2.52-acre parcel of land in Eastland County, Texas (the "Eastland property"). Jacqueline Chesnut ("Mrs. Chesnut"), who is named in the deed as the sole purchaser of the Eastland property, married the debtor, Vance Chesnut ("Mr. Chesnut"), in 1996, approximately three years before she purchased the Eastland property. The parties dispute whether the property was Mrs. Chesnut's separate property or belonged to Mr. and Mrs. Chesnut as their community property. Mrs. Chesnut attended the closing without her husband and signed all of the relevant legal documents alone, including the real estate lien note, the deed of trust, the title policy and the warranty deed. Although the warranty deed recites that the Eastland property was acquired by "Jacqueline Chesnut, as her sole and separate property and estate,"[1] Mr. Chesnut contended that the Eastland property was paid for with community funds, and Texas law provides for a rebuttable presumption that property purchased during marriage is community property.

The original grantor of the deed, after having difficulty collecting timely payments from Mrs. Chesnut, sold the note to Templeton Mortgage Corporation and its sole shareholder, Mark Templeton Brown. After acquiring the note, Brown corresponded with Mrs. Chesnut, telling her that she was delinquent in her obligations. In early 2003, Brown informed Mrs. Chesnut that if she did not make her account current, he would foreclose on the Eastland property. After Mrs. Chesnut

---

[1] None of the other forms related to the property sale included that language.

2

failed to make the necessary payments, Brown set a foreclosure sale for February 4, 2003.

However, on January 31 of 2003, Mr. Chesnut filed an individual Chapter 13 petition for bankruptcy relief. A copy of the bankruptcy petition was faxed to Brown's office that day and reviewed by Brown's attorney. In his appellate brief, Brown acknowledges receipt of notification from Mr. Chesnut of the filing of his Chapter 13 petition; in fact, Brown filed a copy of the notice as an exhibit in this lawsuit. The petition put Brown on notice that Mr. Chesnut claimed that the Eastland property was community property under the protection of the automatic stay. 11 U.S.C. § 362(a)(3) (establishing the automatic stay for property of the estate); § 541(a)(2) (including community property in the debtor's estate). Although Brown knew about the petition and Mr. Chesnut's claim that he held a community interest in the Eastland property, Brown proceeded with the foreclosure sale. The Eastland property was sold on February 4, 2003, as planned.

Mr. Chesnut brought this action against Brown and Templeton Mortgage in August 2003, asserting that Brown willfully violated the automatic stay provisions of 11 U.S.C. § 362(h). The bankruptcy court, without deciding whether the Eastland property was community property, agreed. The bankruptcy court found that Brown's belief that the property was not part of the estate was not sufficient to obviate compliance with the relief-of-stay procedures of 11 U.S.C. § 362(d). The court assessed Brown a fine and attorney's fees. The district court reversed the bankruptcy court, and held that the Eastland property was Mrs. Chesnut's separate property and that, regardless of when that determination was made, there was no violation of the automatic stay because Mr. Chesnut had no interest in the Eastland property. Mr. Chesnut appeals to this court.

II.

A.

We review a decision of a district court, which sat as an appellate court in review of the bankruptcy court, by applying "the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003). Findings of fact are reviewed for clear error and the conclusions of law are reviewed *de novo*. *Id.*

B.

The automatic stay is designed to protect creditors as well as debtors. Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible. The automatic stay prevents such a scramble by providing "breathing room" for a debtor and the bankruptcy court to institute an organized repayment plan. *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004). It allows for the equitable disbursement of estate property among creditors. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 . . . [include] 'further[ing] equity of distribution among the creditors by forestalling a race to the courthouse.'" (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

The development of this principle has progressed unevenly over the last one hundred and fifty years. Its evolving nature is reflected in the Supreme Court's and Congress's incremental modification of the stay in response to perceived defects in its scope. Although the Bankruptcy Act of 1841 did not include an express stay provision, the Supreme Court recognized the need for injunctive power as far back as 1845. In *Ex parte Christy*, the Court protected property *in custodia legis* (literally, "in the custody of the law"; loosely, "in the care of the court") under the rationale that an injunction was necessary to enforce the Court's jurisdiction over the equitable dispersal of property

4

to creditors.  44 U.S. (3 How.) 292, 312 (1845) ("[T]he purposes so essential to the just operation of the bankruptcy system, could scarcely be accomplished except by clothing the courts . . . sitting in bankruptcy with the most ample powers and jurisdiction to accomplish them.").  Ninety years later, the Court extended the scope of the stay to protect property not *in custodia legis*.  *Cont'l Bank v. Rock Island Ry.*, 294 U.S. 648 (1935).  Congress followed in 1938 by making the stay self-executing.  Chandler Act of 1938, 52 Stat. 840-940.  Congress later amended the statute to move the initiation date from confirmation of the plan back to the petition date.[2] In 1978, Congress enacted the current version of the stay, 11 U.S.C. § 362.  This section contains provisions that establish and enforce the stay, except particular kinds of property from its reach, and provide procedure for parties to seek relief from the stay.  11 U.S.C. § 362(a)–(h).

In § 362(h), Congress gave debtors the right to sue for violation of the stay, specifying that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." § 362(h).  A willful violation

> does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Taylor*, 884 F.2d 478, 482 (9th Cir. 1989) (emphasis omitted) (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989); *see also Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir.

---

[2] For a thorough recounting of the history of the automatic stay, see 3 COLLIER ON BANKRUPTCY ¶ 362.LH[1] (15th ed. 2003).

1999).  Thus, there are three elements to a claim under 362(h): (1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay.

The first two elements are undeniably present here.  The bankruptcy court found that Brown knew of Mr. Chesnut's bankruptcy filing, and that Brown intentionally continued with the foreclosure.  Brown contests none of these findings.  This leaves the question whether Brown violated the automatic stay when he foreclosed on the Eastland property without first seeking relief from the bankruptcy court.

C.

Section 362(a)(3) bars any act to obtain possession of property of the estate and, by negative implication, allows "any act to obtain possession" of property that is *not* "property of the estate." Thus, seizing a debtor's bank account would violate the stay, while foreclosing on the home of some unrelated individual's property, to which the debtor neither had nor asserted a claim of interest, would not.  Neither of these examples disposes of the instant case, however, because the classification of the Eastland property as separate or community property was subject to a non-frivolous dispute at the time of Brown's foreclosure.

Brown argues that the district court's post-seizure determination that the Eastland property was Mrs. Chesnut's separate property and thus not a part of Mr. Chesnut's estate must mean that the automatic stay did not bar the foreclosure under the provisions of § 362(a)(3).  The analysis is not so straightforward, however.  In barring foreclosure, § 362(a)(3) implies that the stay bars "act[s] to obtain possession" only of those assets that are "property of the estate" at the time the foreclosure action takes place.  Section 362(a)(3) is silent, however, on when that determination of the asset's

6

status is to be made. In other words, § 362(a)(3) says nothing about the automatic stay's effect on any act to obtain possession of *what is later determined to be* property of the estate. Therefore, the section does not make clear whether its protection extends to property with uncertain status at the time of the act of possession.

The Eastland property was not clearly part of Mr. Chesnut's bankruptcy estate at the time of the foreclosure, but neither was it clearly *not* part of his estate. Whether an asset is property of the estate is a legal determination which frequently entails complex analyses involving a number of legal elements and a variety of facts. Here, the status of the Eastland property hinged on the application of Texas's legal presumptions regarding separate and community property as well as an examination of the factual bases underlying the transaction, including the text of the title documents, the source of purchasing funds, and even the possible existence of fraud. TEX. FAM. CODE ANN. § 3.003; *Bahr v. Kohr*, 980 S.W.2d 723, 726 (Tex. App. Ct. 1998) (citing *Massey v. Massey*, 807 S.W.2d 391, 405 (Tex. App. Ct. 1991)). These questions concerning the characterization of the Eastland property as separate or community property can only be answered with finality through the judicial process, which was not initiated here until after the foreclosure of the Eastland property. Regardless of whether the Eastland property is ultimately held to have been Mrs. Chesnut's separate property or the Chesnuts' community property, at the time that Brown foreclosed on the Eastland property, it was uncertain whether it was property of Mr. Chesnut's estate and, therefore, was arguable property.

We must determine how bankruptcy law treats the unilateral seizure of arguable property. The policy and structure of the Bankruptcy Code suggest that the stay covers at least some arguable property. First, the automatic stay has broad application. *See, e.g.*, *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998); *see also* 3 COLLIER ON

BANKRUPTCY ¶ 362.03 (15th ed. 2003) (noting the stay's "extremely broad" scope). This breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property.

Second, by providing bankruptcy courts broad discretion to lift stays, *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004), Congress has evinced an intent to constitute the bankruptcy courts as the proper forum for the vindication of creditor rights. Sections 362(d) and (e) provide the mechanism for seeking relief from the automatic stay. § 362(d), (e). Section 362(d) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property . . . .

§ 362(d). This provision gives bankruptcy courts flexibility to address specific exigencies on a case-by-case basis. *See* COLLIER, *supra*, at ¶ 362.07[1]; *In re Cordry*, 149 B.R. 970, 974 (D. Kan. 1993). Together with Rule 4001 of the Federal Bankruptcy Rules, § 362(e) provides the procedure for having the stay lifted. § 362(e); FED. R. BANK. P. 4001(a). Generally, these provisions indicate that one must file a motion, R. 4001, and unless a hearing is conducted within thirty days after the party moves for relief, the stay is automatically lifted. § 362(e). For the assertion of creditors' rights, these provisions suggest a preference for adjudication rather than seizure. If a creditor wishes to seize property for lack of adequate protection, § 362(d)(1), or for lack of equity, § 362(d)(2), he cannot do so first and thereby force the debtor to vindicate his rights after the seizure. Instead, he must first

seek relief from the bankruptcy court. Where seized property is arguable property, it is no answer for the creditor to defend the foreclosure by claiming that the property was not properly covered by the stay. We discern no principle, and Brown offers none, for why the "for cause" clause in § 362(d)(1) should be treated differently from the other § 362 grounds for relief.[3]

Finally, a retroactive classification of the property to shape the scope of the stay would encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition and may not be able to vindicate his rights in a later adversary proceeding, a creditor could simply seize arguable property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after foreclosure (as did the district court here), when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

III.

Our conclusion that bankruptcy law demands some process prior to the seizure of arguable property is buttressed and informed by the Supreme Court's analysis in analogous contexts. In *Sniadoch v. Family Financial Corp. of Bay View*, 395 U.S. 337 (1969), the Court ruled that a post-seizure determination vindicating a creditor's property rights was not sufficient to ameliorate the insufficient process attendant to a pre-vindication seizure of the property. At issue was a Wisconsin statute that allowed the garnishment of the debtor's wages by a potential creditor before a judgment

---

[3] This analysis accords with other cases where a creditor who wanted to seize arguable property of the estate went to the bankruptcy court and sought relief under § 362(d)(1) and (e). *In re CyberMedica, Inc.*, 280 B.R. 12, 15 (D. Mass. 2002); *see also In re Masterworks, Inc.*, 94 B.R. 262, 268 (D. Conn. 1988); *In re Purity Ice Cream Co., Inc.*, 90 B.R. 183, 189 (D.S.C. 1988).

had been obtained against the debtor. In striking down the statute, the Court noted that although "it is true" that the frozen assets may "be unfrozen if the trial of the main suit is ever had and the wage earner wins on the merits . . . in the interim the wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have." *Id.* at 339.

In *Fuentes v. Shevin*, 407 U.S. 67 (1972), the Court held that Florida and Pennsylvania replevin statutes were unconstitutional because they failed to meet the basic requirements of due process. The defendants in *Fuentes* seized a stove in the plaintiff's possession on the power of a writ of replevin issued by Florida to the store. To obtain the writ, the latter simply averred that the stove was "wrongfully detained." *Id.* at 70. The statute authorizing the writ did not require a pre-seizure hearing to determine whether the goods were, in fact, wrongfully detained; rather, it allowed the store's "bare assertion" of that fact to suffice. *Id.* at 73–74. Just as it showed hostility to post-seizure determinations of property rights in *Sniadoch*, the Court also expressed skepticism of relying on the store's opinion that it had a legal claim to justify its seizure:

> The Florida and Pennsylvania prejudgment replevin statutes fly in the face of this [due process] principle. To be sure, the requirements that a party seeking a writ must first post a bond, allege conclusorily that he is entitled to specific goods, and open himself to possible liability in damages if he is wrong, serve to deter wholly unfounded applications for a writ. But those requirements are hardly a substitute for a prior hearing, for they test no more than the strength of the applicant's own belief in his rights. *Since his private gain is at stake, the danger is all too great that his confidence in his cause will be misplaced.*

*Id.* at 83 (emphasis added).

In *Connecticut v. Doehr*, 501 U.S. 1 (1991), the Court invalidated a Connecticut statute that allowed plaintiffs to attach their potential judgments against the defendant's property. The plaintiff had attached a $75,000 lien on the defendant's home in connection with the plaintiff's civil suit for assault and battery. The state statute authorizing the attachment required only that the plaintiff aver

10

that the facts in support of his civil claim were true. Here, the Court noted that the "risk of erroneous deprivation" was "substantial" because it hinged on "one ultimate factual contingency—the award of damages to the plaintiff which the defendant may not be able to satisfy." *Id.* at 12.

The Supreme Court's hostility to the inherent dangers of *ex parte* or unilateral seizures of arguable property is seen in other contexts as well. Federal Rule of Civil Procedure 65(c), for example, establishes a bond requirement by providing that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant . . . for the payment of such costs and damages as may be incurred or suffered by any party *who is found to have wrongfully enjoined or restrained.*" FED. R. CIV. P. 65(c) (emphasis added). This requirement, which is the usual prerequisite for attachments and writs of replevin, is designed to provide the person whose property is to be seized with some protection against the improvident authorization of the seizure of his property.

Although Brown's seizure does not implicate due process protections because it does not involve state action, *Barrera v. Sec. Bldg. & Inv. Corp.*, 519 F.2d 66, 1172–73 (5th Cir. 1975), these authorities highlight the risk attendant in, and the law's general antipathy towards, unilateral seizure of arguable property without process. The risks were particularly acute in this case. First, there was a substantial risk of error in Brown's decision to foreclose. *Connecticut*, 501 U.S. at 11 (listing the first prong of the *Mathews v. Eldridge* test, "the risk of erroneous deprivation" (citing 424 U.S. 319, 335 (1976))). At the time of the seizure, Texas law contained a presumption that the Eastland property was community in character because it was purchased during marriage by one spouse. TEX. FAM. CODE ANN. § 3.003. The existence of a presumption that the Eastland property was community property and therefore part of the estate increased the likelihood that the

11

unilaterally foreclosed upon asset would ultimately be determined to be property of the estate.

Moreover, as already noted, such intricate legal analyses do not easily lend themselves to a unilateral

determination of the merits by the seizing party and, therefore, enhance the already-present possibility

that property of the estate would be improperly seized. In such situations, unilateral foreclosures are

particularly offensive.[4]

Second, the potential effect on Mr. Chesnut and on other creditors was substantial.

*Connecticut*, 501 U.S. at 11 (l isting the second prong of the *Mathews* test, "consideration of the

private interest that will be affected by the prejudgment measure"). If the Eastland property is indeed

property of the estate, it would constitute one of Mr. Chesnut's most substantial assets. By seizing

it, Brown would seriously harm Mr. Chesnut's estate, as well as hinder the ability of other creditors

to obtain equitable distributions of the estate's resources.[5]

Third, the burden and cost of abeyance for Brown was slight. *Id.* (listing the last prong in the

*Mathews* test, "attention to the interest of the party seeking the prejudgment remedy"). As Brown

conceded at the hearing, "[i]t's very common in the course of my business to see bankruptcy filings."

As he further stated, he "absolutely" has stopped foreclosures in such instances. Suspending planned

foreclosure actions in the face of a bankruptcy petition was a matter of course for Brown and not

obviously acutely harmful to his business. Moreover, as opposed to more moveable collateral, real

---

[4] The existence of the presumption of community property, although not strictly necessary to the outcome, serves to distinguish this case from instances where other relatives—brothers or aunts, for example—make claims on property.

[5] The district court expressed concern that following the bankruptcy court's rule would destroy any reliance on the warranty deed. That concern is unfounded. Here, Brown was told of Mr. Chesnut's bankruptcy and specifically informed of Mr. Chesnut's claim, based on a presumption in Texas law, to the Eastland property.

property cannot be physically moved or hidden, and there is no allegation that Mr. Chesnut was going to destroy or otherwise damage the value of the Eastland property. Furthermore, the procedural burden on Brown to petition for relief from the stay was not onerous. Rule 4001(a) only requires a motion for relief, and under § 362(e) the stay is automatically lifted as to the challenged property if the motion is not acted on within 30 days. R. 4001; § 362(e). Finally, if Brown's inability to foreclose on the Eastland property was particularly harmful to his business, he could have sought immediate, *ex parte* relief under § 362(f).

IV.

Not every bankruptcy petition, with an attendant claim of a right in property, will transform what is obviously not property of the estate into arguable property that is subject to process requirements. Nevertheless, given the considerations above, we are convinced that this is one such instance. The district court erred in absolving Brown's willful violation of the automatic stay with a post-seizure determination of the property's characterization.

The judgment of the district court is REVERSED and the judgment of the bankruptcy court is AFFIRMED.