# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2009

Charles R. Fulbruge III
Clerk

No. 09-10145

In the Matter of:  VANCE COLE CHESNUT,

                                                            Debtor

---

MARK T BROWN; TEMPLETON MORTGAGE CORP,

                                                            Appellants

v.

VANCE COLE CHESNUT,

                                                            Appellee

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-CV-00578

---

Before KING, GARZA, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Templeton Mortgage Corp. holds a lien on real property that it asserts belongs solely to the wife of Appellee and former Chapter 13 Debtor

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Vance Chesnut. Appellant did not object either to the proof of claim the Debtor filed on its behalf or to the Debtor's proposed Chapter 13 plan that dealt with Appellant's claim and lien. The plan required the release of each secured creditor's lien upon completion of payments to that creditor under the plan. The Debtor made all required payments to Appellant under the plan, but Appellant refused to release the lien. We hold that res judicata bars Appellant's claim that, contrary to the plan, the lien need not be released because the property to which it attached was not part of the Debtor's estate. We therefore affirm the judgments of the courts below.

## I. BACKGROUND

Vance Chesnut and Jacqueline Chesnut were married in 1996. A few years later, Mrs. Chesnut acquired from Brooksie Nell Hodges the deed to 2.52 acres of land in Eastland County, Texas (the "Eastland property"). The deed recited that the Eastland property was granted to Mrs. Chesnut "as her sole and separate property and estate," and all relevant legal documents were signed only by Mrs. Chesnut. In return, Mrs. Chesnut made a promissory note for the purchase price of $26,000, secured by a vendor's and deed of trust lien on the Eastland property. Hodges subsequently assigned the note and lien to Templeton Mortgage Corp., of which Mark Templeton Brown is the sole shareholder.[1] When Mrs. Chesnut stopped making payments on the note, Templeton accelerated the debt and set a foreclosure sale for February 4, 2003.

On January 31, 2003, Mr. Chesnut filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Mrs. Chesnut did not join in the petition. Claiming in the petition that Templeton was a secured creditor, Mr. Chesnut sought release of all liens upon full payment of Templeton's allowed secured claim. Templeton, believing that Mr. Chesnut had

---

[1] Unless otherwise noted, we will refer to the Appellants as "Templeton."

no interest in the Eastland property, proceeded with the foreclosure sale as planned. Subsequently, Mr. Chesnut filed schedules claiming that he had a community interest in the Eastland property, that the Eastland property was exempt as homestead, and that Templeton was a creditor holding a secured claim. At that time, Mr. Chesnut also filed an Original Chapter 13 Plan alleging that Templeton was a secured creditor and providing that Templeton's allowed secured claim would be paid off in exchange for release of the lien.

Several months later, Mr. Chesnut filed an adversary proceeding against Templeton, claiming a willful violation of the automatic stay provision, 11 U.S.C. § 362. In that proceeding, the bankruptcy court declined to determine whether the Eastland property was community or separate property, instead concluding that Templeton violated the automatic stay by foreclosing in spite of having notice that Mr. Chesnut claimed an interest in the property. *See Chesnut v. Brown (In re Chesnut)*, 300 B.R. 880, 887 (Bankr. N.D. Tex. 2003). On appeal, the district court reversed after concluding that the Eastland property was separately owned and therefore not property of the estate subject to the protection of the automatic stay. *Brown v. Chesnut (In re Chesnut)*, 311 B.R. 446, 450 (N.D. Tex. 2004). On appeal to this court, we reversed the district court's judgment and affirmed the bankruptcy court's judgment. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 306 (5th Cir. 2005) ("*Chesnut I*"). We concluded that the Eastland property was "arguable property" of the bankruptcy estate and that the automatic stay therefore protected it from unilateral action by creditors. *Id.* at 303–04.

While *Chesnut I* was on appeal, Mr. Chesnut's bankruptcy case continued. Pursuant to 11 U.S.C. § 501(c), Mr. Chesnut filed a proof of claim on Templeton's behalf, initially listing the Eastland property's value at $15,110 and the debt at $22,000. Templeton received notice of the proof of claim but did not file any objections. Mr. Chesnut also filed a Final Chapter 13 Plan and Motion for

Valuation listing Templeton's claim at $22,000, valuing the claim at the same amount, and proposing to pay that amount plus interest over a term of 44 months. The plan provided that all secured creditors would release their liens upon completion of plan payments.[2] Templeton did not object to the plan or the valuation; the plan was confirmed by order dated December 8, 2004. Templeton did not appeal the confirmation order, nor did Templeton take further action once *Chesnut I* was decided.

Mr. Chesnut made payments according to the confirmed plan. Once the Standing Chapter 13 Trustee had paid Templeton in full under the plan (approximately $26,000, including interest), Mr. Chesnut sought release of Templeton's lien on the Eastland property. Templeton refused, asserting that the payments made under the plan were insufficient to satisfy the original promissory note. Mr. Chesnut moved to enforce the confirmed plan and compel release of the lien. Templeton responded that the Eastland property was Mrs. Chesnut's separate property, that no proceeding had ever determined that it was property of the estate, and that the confirmed plan could not affect the validity of its lien.[3]

---

[2] The release provision was included under paragraph L and L(2), labeled "miscellaneous":

> Each secured creditor's lien . . . will be released after payment through the plan of the creditor's allowed secured claim, with allowed interest, to the extent of the lesser of the amount listed in the claim column or . . . the value column . . . .
>
> Each secured creditor's lien . . . shall be released after the amount of the creditor's allowed secured claim is paid. All secured creditors shall execute any documentation necessary to release their liens upon payment of their allowed secured claim[s].

[3] The sole issue before this court on appeal is whether res judicata bars Templeton from now asserting that, because there was no explicit finding by the bankruptcy court that the Eastland property was property of the estate, the lien on the Eastland property need not be released. As the bankruptcy court recognized, "[r]elease of the lien on the [Eastland property] does not affect Mrs. Chesnut's obligation to [Templeton]." *In re Chesnut*, , No. 03-41050, 2008 WL 2962943, at *5 (Bankr. N.D. Tex. July 29, 2008). Templeton is "free to use and pursue any and all remedies which may still be available under the law to recoup from Mrs. Chesnut any

The bankruptcy court ordered the lien released, holding that because Templeton failed to raise the issue prior to confirmation, res judicata barred the collateral attack on the confirmed plan. *In re Chesnut*, 2008 WL 2962943, at *3–4. On appeal, the district court affirmed. *Brown v. Chesnut (In re Chesnut)*, 400 B.R. 74, 84 (N.D. Tex. 2009). Templeton timely appealed.

## II.  DISCUSSION

In its opening brief, Templeton identifies five "issues presented for review." These five issues address (1) whether res judicata applies to the Chapter 13 plan and requires Templeton to release the lien and (2) whether Templeton had adequate notice of the effects of the plan's provisions.[4]

### A.  Standard of Review

We review, as the district court did, the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See Valley Educ. Found., Inc. v. Eldercare Props. Ltd. (In re Eldercare Props. Ltd.)*, 568 F.3d 506, 515 (5th Cir. 2009). The application of res judicata is a question of law that we review de novo. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

---

deficit that is owed." *Id.*

[4] The five issues listed in Templeton's opening brief are:
1. Whether the bankruptcy court lacks jurisdiction to order the release of a lien on property which is not property of the bankruptcy estate.
2. Whether the Debtor's Chapter 13 Plan gave Appellants adequate notice that the Debtor intended by his Plan to require Appellants to release their lien on property that was not property of the bankruptcy estate.
3. Whether the doctrine of res judicata bars Appellants from arguing that their lien should not be released because the property was not property of the bankruptcy estate.
4. Whether the bankruptcy judge erred in ordering the release of a lien on property that was never found to be property of the bankruptcy estate.
5. Whether the bankruptcy judge erred in failing to conduct a trial of the still pending adversary proceeding, post-remand from the Fifth Circuit Court of Appeals, in which the Appellants' asserted defense is that the property in issue is not property of the bankruptcy estate.
Issues 1, 3, 4, and 5 all turn on whether res judicata precludes Templeton's claim in this case and will be discussed accordingly.

## B. Res Judicata

In determining whether a claim is precluded under principles of res judicata, our circuit applies the following test:

> For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc) (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979)). We give res judicata effect to a bankruptcy court's confirmation order when the elements of this test are satisfied. *Sun Fin. Co. v. Howard (In re Howard)*, 972 F.2d 639, 641 (5th Cir. 1992); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987). The parties' dispute centers on the jurisdiction of the bankruptcy court to order release of a lien on property that Templeton asserts was not part of Mr. Chesnut's bankruptcy estate.

Templeton is precluded in this appeal from challenging the bankruptcy court's subject matter jurisdiction during the confirmation proceedings. The issue of a bankruptcy court's subject matter jurisdiction may be raised on direct appeal; however, a party to the original proceeding that had a fair chance to challenge jurisdiction may not raise the question of jurisdiction in a collateral attack. *Travelers Indem. Co. v. Bailey*, — U.S. —, —, 129 S. Ct. 2195, 2205 (2009) ("[O]nce the [prior] Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." (internal quotation marks omitted)); *Shoaf*, 815 F.2d at 1049–54 (giving res judicata effect to a Chapter 11 plan's release of a third-party

guarantor despite the bankruptcy court's lack of statutory authority to order such a release). Templeton does not contest that it received notice of both the proof of claim filed on its behalf and the Chapter 13 plan. Templeton could have raised the issue of jurisdiction before the bankruptcy court by objecting to the proof of claim filed on its behalf, by objecting to the plan, or by directly appealing the confirmation order. It followed none of those courses of action, and the bankruptcy court's subject matter jurisdiction is therefore insulated from Templeton's collateral attack.

Templeton argues that this court's decision in *McCloy v. Silverthorne (In re McCloy)*, 296 F.3d 370 (5th Cir. 2002), compels a bankruptcy court to determine the separate or community character of property before the proper exercise of jurisdiction. In that case, Mr. McCloy had purchased a parcel during marriage, then borrowed funds from Silverthorne, executing a note and using the parcel as security. *Id*. at 371. Mrs. McCloy did not sign any of the relevant documents. *Id*. Mrs. McCloy then filed for bankruptcy, listing the parcel on her schedule of assets; she did not, however, list Silverthorne as a creditor, and Silverthorne was not notified of her bankruptcy or of her claim to the parcel. *Id*. Mr. McCloy—again without his wife's participation— subsequently executed a new note and deed of trust for the parcel; when this went unpaid, Silverthorne foreclosed. *Id*. at 372. Mr. McCloy sued in state court to set aside the foreclosure for lack of notice, and Mrs. McCloy intervened to claim a one-half interest in the parcel. *Id*. Before Mrs. McCloy intervened, however, Mr. McCloy had been placed into involuntary bankruptcy; Mr. McCloy's Chapter 7 trustee removed the state court suit to the bankruptcy court. *Id*. The trustee and Silverthorne arranged a settlement requiring the release of the estate's claims to the parcel; the bankruptcy court approved the settlement over the McCloys' objections, finding that the parcel was Mr. McCloy's sole-management community property. *Id*.

On appeal, the McCloys argued that the bankruptcy court lacked jurisdiction to determine the rights of Mrs. McCloy—a non-debtor— in the parcel because Mr. McCloy's interest had already been foreclosed on. *Id.* at 372–73. We assessed whether the bankruptcy court had "related to" jurisdiction under 28 U.S.C. § 157(c)(1) to hear the state court proceeding based on whether "'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" *Id.* at 373 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)). We determined that the parcel was Mr. McCloy's sole-management community property, that he had the power to encumber the entire property, and that Mrs. McCloy's interest therefore did not survive the foreclosure. *Id.* at 374. We held that the bankruptcy court had jurisdiction to hear the proceeding because "a determination as to [the parcel] clearly would have an effect on the assets of the bankruptcy estate." *Id.*

We do not read *In re McCloy* to compel a different result in this case. Unlike here, the question of the bankruptcy court's subject matter jurisdiction was timely raised in that case. The parties contesting the bankruptcy court's jurisdiction raised that objection immediately, permitting the parties to brief the issue and the courts to properly consider the matter. Here, in contrast, Templeton failed to object either to the proof of claim or to Mr. Chesnut's proposed plan, notwithstanding *Chesnut I*'s holding that the Eastland property was arguably within Mr. Chesnut's bankruptcy estate. Instead, Templeton's argument—that the bankruptcy court should have performed a complete analysis of the Eastland property's character under Texas community property law—comes far too late in the proceedings for us to unsettle a confirmed and completed Chapter 13 plan.

We therefore hold that res judicata applies to the confirmed Chapter 13 plan in this case. While the Supreme Court's decision in *Travelers Indemnity Co. v. Bailey* did not involve a Chapter 13 plan, the text of the Bankruptcy Code

supports the application of res judicata to such plans:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a); *see In re Howard*, 972 F.2d at 641 ("[A] confirmed Chapter 13 plan is *res judicata* as to all parties who participate in the confirmation process."); 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1][a] (Alan N. Resnick et al. eds., 15th ed. rev. 2009) ("The binding effect of the confirmation order . . . [makes i]t . . . incumbent upon creditors . . . to review the plan and object to the plan if they believe it to be improper; they may ignore the confirmation hearing only at their peril."). We are also aided in this decision by the consequences to the Chapter 13 Trustee system were we to undo the finality of a confirmed and completed Chapter 13 plan at the behest of a creditor that had notice of the plan and an opportunity to object. Tim Truman, the Chapter 13 Trustee (the "Trustee") involved in this case, filed an amicus brief urging the application of res judicata to the confirmed plan. The Trustee's amicus brief notes that "[i]t is upon the Order of Confirmation that the Trustee relies in his distribution of funds pursuant to the confirmed plan." We do not disturb that reliance here.

## C. Requirement of an Adversary Proceeding

Templeton asserts that the bankruptcy court could order the release of a lien on the Eastland property only after determining it to be property of the estate through an adversary proceeding. Templeton cites Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, which states that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Because no adversary proceeding established Mr. Chesnut's rights in the Eastland property, Templeton claims, there could be no res judicata effect flowing from the confirmation order.

We reject Templeton's argument that an adversary proceeding under Rule

7001(2) was needed for res judicata to apply here. By its terms, Rule 7001(2) does not apply to this dispute. The text of the rule refers to determination of the "validity, priority, or extent of a lien." The confirmed plan does not challenge the validity of Templeton's lien, its priority over any other lien on the Eastland property, or its extent to the full value of Templeton's claim. Instead, the plan expressly acknowledged that Templeton's claim was fully secured and required—upon full payment of the claim—that Templeton release any lien securing the claim. That condition has been satisfied, and res judicata applies.[5]

Nor do the cases Templeton cites suggest otherwise. In *Simmons v. Savell (In re Simmons)*, we held that a lien was not voided by confirmation of a Chapter 13 plan that listed the claim as unsecured when the creditor filed a proof of claim listing the claim as secured, and the debtor did not object. 765 F.2d 547, 557 (5th Cir. 1985). We found that 11 U.S.C. §§ 502 and 506 permitted a secured creditor to abstain from participating in bankruptcy without losing its lien, placing the burden on the debtor to object to the creditor's claim. *Id.* at 558. We reaffirmed *In re Simmons* in *In re Howard*, where we stated:

> *Shoaf* stands for the proposition that a confirmed Chapter 13 plan is *res judicata* as to all parties who participate in the confirmation process. The general applicability of *res judicata* to bankruptcy plan confirmations must give way, however, to the interest of the secured creditor, as we recognized in *Simmons*, in being confident that its lien is secure unless a party in interest objects to it. Unlike the creditor in this case, the holder of the guaranty in *Shoaf* was not a secured creditor of the debtor entitled to the protection of §§ 502(a) and 506. . . . *Simmons* represents a limited exception to the general rule of *Shoaf* based upon the competing concerns expressed in the bankruptcy code.

972 F.2d at 641; *see also IRS v. Taylor (In re Taylor)*, 132 F.3d 256, 261 (5th Cir.

---

[5] The early iterations of Mr. Chesnut's proposed plans listed Templeton's claim as partially secured and partially unsecured, but the confirmed plan treated Templeton's claim as fully secured. We need not and do not address the application of res judicata had Mr. Chesnut's confirmed plan treated Templeton's claim as undersecured.

1998) (applying the *In re Simmons* exception to a tax penalty because the penalty would have survived the debtor's Chapter 11 proceeding).

We find these authorities distinguishable from the present case. Here, Mr. Chesnut filed a proof of claim on Templeton's behalf, and no party ever contested the claim or the validity of the lien. Mr. Chesnut's Chapter 13 plan did not seek to void or reduce the lien, but instead provided that the lien would be released upon full payment of Templeton's claim, which was done. Applying res judicata to Mr. Chesnut's confirmed plan does not run afoul of *In re Simmons*, *In re Howard*, and *In re Taylor*,[6] which stand for the unremarkable proposition that a Chapter 13 plan must be consistent with the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1322(b)(11) ("[T]he plan may . . . include any other appropriate provision not inconsistent with this title."). The absence of an adversary proceeding here does not affect our conclusion that res judicata bars Templeton's challenge to Mr. Chesnut's Chapter 13 plan.[7]

Templeton further asserts that under Texas law, if the Eastland property is community property, then it is presumed to be Mrs. Chesnut's sole-management community property. *See* TEX. FAM. CODE ANN. § 3.104(a) (Vernon 2006). This, Templeton claims, placed the burden on Mr. Chesnut to initiate an

---

[6] The same distinction exists with regard to *In re Kleibrink*, 346 B.R. 734, 751–52 (Bankr. N.D. Tex. 2006), currently on appeal to this court, where the bankruptcy court found that a lien was not extinguished by a confirmed Chapter 13 plan that listed an allowed secured claim as unsecured because no adversary proceeding under Rule 7001(2) had occurred. As discussed above, Mr. Chesnut's Chapter 13 plan did not challenge the validity, priority, or extent of Templeton's lien, and Rule 7001(2) was therefore not implicated.

[7] We note that counsel for Templeton expressed a desire to resolve, through an evidentiary hearing or adversary proceeding, whether the Eastland property was property of the bankruptcy estate at hearings on September 27, 2007, and May 12, 2008. Our revised opinion in *Chesnut I* did not remand the adversary proceeding relating to violation of the automatic stay, and that adversary proceeding was thus not an appropriate vehicle to resolve the issue. We express no opinion on whether Templeton would have been entitled to pursue the issue through a separate adversary proceeding or what the outcome of such a proceeding might have been.

adversary proceeding in order to rebut that presumption. The time to have made that point, however, was during the pendency of the Chapter 13 proceeding. As the bankruptcy court pointed out, Templeton did not take advantage of Mr. Chesnut's filing of a claim on its behalf or the confirmation process to raise its questions about the separate or community character of the Eastland property and whether it was properly treated in the plan. *In re Chesnut*, No. 03-41050, 2008 WL 2962943, at *2. To raise these issues now, in the context of resisting compliance with a provision of a completed plan, would run afoul of the finality required of such a plan.

## D. Notice

In its statement of issues and summary of the argument, Templeton claims that it had insufficient notice of Mr. Chesnut's intention to require release of the lien. This argument is absent from the body of Templeton's brief, and we find it waived. *See Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 927 (5th Cir. 2008). Even were this argument properly briefed, it would not support Templeton's position. Templeton actively participated in Mr. Chesnut's bankruptcy proceeding, litigating and appealing to this court an issue related to the Eastland property's characterization and inclusion in the bankruptcy estate. There is no claim that Templeton was not served with all relevant filings—including a proof of claim filed on its behalf, Mr. Chesnut's Chapter 13 plan, and the confirmation order. The Trustee's amicus brief puts it succinctly:

> [Templeton] made no attempt to bring before the Court any action which would have resulted in a final determination of the character of the Property. Instead, it sat back and said nothing while the Trustee, pursuant to the final confirmation order paid [Templeton] $26,233.60 on the secured claim filed for it by [Mr. Chesnut]. In light of that omission, [Templeton] is bound by the *res judicata* effect of the Confirmation Order which clearly establishes and makes provision for the payment of [Templeton]'s lien through [the] Chapter 13 Plan. [Templeton] may not now come before the Court seeking adjudication of issues which could have been determined

prior to confirmation as required by 11 U.S.C. § 1327(a).

## III.  CONCLUSION

We hold that the res judicata effect of the bankruptcy court's Chapter 13 confirmation order bars Templeton's claim that the bankruptcy court could not order its lien released.  Accordingly, we AFFIRM the judgment of the district court in turn affirming the order of the bankruptcy court.

AFFIRMED.