# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2011

No. 09-41199

Lyle W. Cayce
Clerk

In the Matter of: DONALD LEE YOUNG,

Debtor

_____

CHRIS DI FERRANTE,

Appellant,

v.

DONALD LEE YOUNG; DORIS YOUNG,

Appellees.

_____

In the Matter of: DONALD LEE YOUNG; DORIS YOUNG,

Debtors

_____

CHRIS DI FERRANTE,

Appellant,

v.

DONALD LEE YOUNG; DORIS YOUNG,

Appellees.

No. 09-41199

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:07-CV-542

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Chris Di Ferrante appeals the district court's order affirming various decisions of the United States Bankruptcy Court for the Southern District of Texas. For the reasons stated below, we vacate the district court's order and remand to the district court.

**I**

The facts and history of the bankruptcy cases and associated adversary proceedings are extensive, and we recount only the facts and procedural background pertinent to the issues presented in this appeal.

Doris Ann Young and Donald Lee Young (together, the Youngs) are married and have an adult daughter, Donna Holcomb. Di Ferrante is a Texas lawyer; at one time, he was Mr. Young's attorney. Di Ferrante alleged, first in state court and then in an adversary proceeding in federal bankruptcy court, that Mr. Young owed legal fees to Di Ferrante. Di Ferrante alleged that there had been a fraudulent transfer of property located in Kemah, Texas, from the Youngs to a company controlled by Holcomb and a fraudulent reconveyance of that property back to the Youngs as part of a scheme to avoid payment of the fees owed to Di Ferrante. In state court proceedings, a third party lender whose debt was secured by a lien on the Kemah property assigned that debt and lien to Di Ferrante. In the Youngs' Chapter 7 bankruptcy proceedings, Di Ferrante

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 09-41199

asserted not only that he was a lienholder on the Kemah property but that the fraudulent reconveyance should be set aside and the Kemah property should be restored to the assets of Holcomb's company rather than treated as an asset of the Youngs' bankruptcy estates.

The multiple state court and bankruptcy proceedings that were filed over several years, according to the bankruptcy court, "devolved into a litigation quagmire that [was] costing inordinate amounts of money, time and judicial resources."[1]  The bankruptcy court entered various orders and a judgment that we will consider in more detail in connection with our resolution of the issues that Di Ferrante presents in this appeal.  Those issues are whether (1) Di Ferrante was required to serve the trustee in the Youngs' bankruptcy proceedings with a summons in order to make him a party to an adversary proceeding; (2) the bankruptcy court abused its discretion in dismissing Di Ferrante's adversary proceeding regarding the alleged fraudulent transfer of the Kemah property; and (3) the bankruptcy court erred in awarding funds in the registry of the court without determining whether those funds were an asset of the bankruptcy estates of either of the Youngs.

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d).  We apply "'the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court'" sitting as an appellate court.[2]  We review the bankruptcy court's conclusions of law de novo[3] and

---

[1] *Di Ferrante v. Young (In re Young)*, No. 07-80119, 2007 WL 2684063, at *1 (Bankr. S.D. Tex. Sept. 7, 2007).

[2] *Jacobsen v. Moser* (*In re Jacobsen*), 609 F.3d 647, 652 (5th Cir. 2010) (quoting *Kennedy v. MindPrint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009)).

[3] *Id.* (citing *Szwak v. Earwood* (*In re Bodenheimer, Jones, Szwak & Winchell L.L.P.*), 592 F.3d 664, 668 (5th Cir. 2009)).

No. 09-41199

findings of fact for clear error.[4]  We will reverse a finding of fact "only when this court is left with 'the definite and firm conviction that a mistake has been made.'"[5]  We review de novo mixed questions of law and fact, or application of law to fact.[6]  We review a bankruptcy court's decision to dismiss a case for abuse of discretion.[7]  "A bankruptcy court abuses its discretion when it (1) applies an improper legal standard or . . . (2) rests its decision on findings of fact that are clearly erroneous."[8]

### III

We consider the first two issues on appeal together since the pertinent facts are intertwined to some degree.  We begin with the relevant portions of an order that the bankruptcy court issued on August 10, 2007, which granted a partial summary judgment to Di Ferrante.

Di Ferrante had filed a motion for summary judgment in adversary proceeding No. 06-3195, to which the Youngs had not responded as to his claims regarding the Kemah property.  A hearing on that motion and other matters was held on August 10, 2007.  The record reflects that counsel for the trustee in the Youngs' chapter 7 proceedings appeared at the hearing in No. 06-3195.  The

---

[4] *Id.*

[5] *Chiasson v. J. Louis Matherne & Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1333 (5th Cir. 1993) (quoting *Young v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* (*In re Young*, 995 F.2d 547, 548 (5th Cir. 1993)).

[6] *Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1021 (5th Cir. 1999).

[7] *See Peterson v. Atlas Supply Corp.* (*In re Atlas Supply Corp.*), 857 F.2d 1061, 1063 (5th Cir. 1988) (holding that the bankruptcy court did not abuse its discretion in denying the petitioner's motion to dismiss under 11 U.S.C. § 707(a)); *see also Price v. U.S. Tr.* (*In re Price*), 353 F.3d 1135, 1138 (9th Cir. 2004) ("We review a bankruptcy court's decision to dismiss a case for abuse of discretion.").

[8] *Caplin & Drysdale Chartered v. Babcock & Wilcox Co.* (*In re Babcock & Wilcox Co.*), 526 F.3d 824, 826 (5th Cir. 2008) (citing *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005)) (internal quotation marks omitted).

bankruptcy court issued a written order the same day. That order reflected that because of various failures by the Youngs to comply with previous court orders, the bankruptcy court deemed certain facts in Di Ferrante's complaint in adversary proceeding No. 06-3195 to be true. The bankruptcy court held that the Kemah property was not the Youngs' homestead and was therefore non-exempt property. However, the bankruptcy court concluded that it could not rule upon Di Ferrante's contentions regarding the fraudulent transfer of the Kemah property because the trustee in the Youngs' Chapter 7 bankruptcy proceedings was a necessary party to the adversary proceeding and had not been joined. The bankruptcy court ordered that if the trustee was not joined within 30 days, Di Ferrante's adversary proceeding would be dismissed.

The same day that this order issued, August 10, 2007, counsel for the trustee entered a written appearance in Donald Young's bankruptcy proceeding and adversary proceeding No. 06-3195, "demand[ing] that all notices given or required to be given and all papers served in this case be delivered to and served upon" the attorney for the trustee. The notice of appearance further provided that this "demand include[d] not only the notices and papers referred to in the above mentioned Bankruptcy Rules, but also include[d], without limitation, all orders, applications, motions, petitions, pleadings, requests, complaints or demands, whether formal or informal, written or oral, transmitted or conveyed by mail delivery, telephone, facsimile or otherwise, in these cases." The notice provided, however, that it "simply constitute[d] a demand and request for service and [did] not constitute a consent to the jurisdiction of the Bankruptcy Court."

After the August 10, 2007, order issued, Di Ferrante amended his complaint in the adversary proceeding to name the trustee as a party; he included a certificate of service with the amended complaint indicating that he had served it on the debtors and on the trustee at the trustee's attorney's address. Di Ferrante also requested that a summons be issued, and it was, but

he never served the summons on the trustee. Di Ferrante's subsequent filings in the bankruptcy court indicate that there were further contacts with counsel for the trustee regarding service that we will discuss below.

On September 7, 2007, two days before the expiration of the 30-day deadline for joining the trustee as a party in the adversary proceeding, the bankruptcy court issued a memorandum opinion (September order) containing various findings and a proposed final order to "resolve all outstanding disputes" relating to the Youngs' bankruptcies and associated adversary proceedings. The bankruptcy court found that "no further evidence would assist [it] in arriving at a just conclusion" in the litigation.[9] The court stated that it was proceeding under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" Title 11, the Bankruptcy Code.[10] The court found that under that provision it could act "*sua sponte* in 'taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.'"[11] Thus, the court concluded, it would issue an order to "prevent further abuses and to assure that the parties receive a just result."[12] The bankruptcy court concluded that the validity of the lien that Di Ferrante claimed on the Kemah property was "no longer an issue" because the Kemah property was not homestead, was non-exempt, and was therefore subject to execution to satisfy Di Ferrante's claim as a judgment creditor. Although this order recited that Di Ferrante had claimed that the Kemah property had been fraudulently

---

[9] *Di Ferrante v. Young (In re Young)*, No. 07-80119, 2007 WL 2684063, at *1 (Bankr. S.D. Tex. Sept. 7, 2007).

[10] *Id.*

[11] *Id.* (quoting 11 U.S.C. § 105(a)).

[12] *Id.*

transferred to avoid his claims, the order did not dispose of the fraudulent transfer claims expressly. The September order stated that although the court had "never had an opportunity to address the disputes between the parties based on the merits," the court "[i]nstead . . . has granted substantial relief to Di Ferrante based on the Young's [sic] wholesale defiance of this court's discovery orders." The parties filed various motions objecting to the proposed final order and seeking clarification.

We pause at this juncture to note that the September 7, 2007, opinion and proposed order was issued before the 30-day deadline to join the trustee as a party in adversary proceeding No. 06-3195 had expired. The September proposed order did not reflect that the basis for dismissing the adversary proceeding was Di Ferrante's failure to join the trustee or failure to serve the trustee with a summons. Instead, the basis for the proposed ruling appears to have been the bankruptcy judge's conclusion that equity was being done by recognizing the non-exempt status of the Kemah property. This disposition meant, however, that Di Ferrante's claim as a judgment creditor was subordinate in the priority chain to the trustee's claim for administrative expenses. If the Kemah property were determined to have been fraudulently transferred to the Youngs and deemed the property of their daughter's company, the Kemah property would not be subject to the trustee's claims.

On October 24, 2007, the bankruptcy court entered a final order (October 2007 order) that tracked the proposed ordering paragraphs of the September 2007 order. Among other things, the October 2007 order dismissed the Youngs' bankruptcy proceedings with prejudice and dismissed Di Ferrante's associated adversary proceedings. The court found the Kemah property to be non-exempt, and charged it with a lien held by Di Ferrante as a judgment creditor. The order also released a bond the Youngs had deposited in the court's registry as protection against the deterioration of the value of the Kemah property. The

court made no findings as to the legal owner of the bond funds, but ordered that they be released to "Paul Young [the Youngs' son], Donald Lee Young and Midtown Park Development Ltd. [Paul's company]." The bankruptcy court's order made no mention of whether the trustee had been joined as a party to Di Ferrante's adversary proceeding regarding the Kemah property. Nor did the October 2007 order discuss the fraudulent transfer claims that Di Ferrante had asserted regarding this property.

Di Ferrante filed objections to the October 2007 order and a request for reconsideration. That filing did not raise any issues regarding Di Ferrante's fraudulent transfer claims or the release of funds. The bankruptcy court issued an order on December 10, 2007, addressing Di Ferrante's concerns and denying his motion for reconsideration of the matters he had identified.

In response to a request by the trustee in Doris Young's chapter 7 bankruptcy proceeding, the bankruptcy court modified its October 2007 order in an order dated December 19, 2007. This December 19, 2007, order reopened that bankruptcy proceeding, ordered that it be noticed as an asset case, and directed the trustee to administer the non-exempt Kemah property.

It was in response to this modification that Di Ferrante filed, on December 30, 2007, a motion for reconsideration in which he discussed his fraudulent conveyance claim at length and requested the bankruptcy court to reopen the adversary proceeding and remove the Kemah property from the Youngs' estates.

The bankruptcy court then ordered Di Ferrante, on January 3, 2008, to show whether a summons had been served on the trustee within 30 days after the issuance of the August 10, 2007, order. Di Ferrante's submission in reply took the position that service of a summons was not necessary due to the notice of appearance filed by the trustee's attorney and the fact that a copy of the amended complaint had been served on the trustee's attorney and the trustee through his attorney. Di Ferrante's filing in response to the bankruptcy court's

inquiry also indicated, however, that because of extensive dealings with the trustee, through counsel, Di Ferrante at one point thought that a proposed sale would moot the issues regarding the Kemah property and that was why he had not pursued service of the summons. Di Ferrante's filing also indicated that he had sent a waiver of service form to the attorney for the trustee, there had been numerous discussions about how the trustee should be served in order to contain costs, but that in the final analysis, no summons had been served on the trustee.

The record accordingly reflects that the first indication from the bankruptcy court that the failure to serve a summons on the trustee could serve as a basis for the October 2007 judgment dismissing Di Ferrante's adversary proceeding came in January 2008, when the bankruptcy court directed Di Ferrante to provide evidence that the summons had been served. In an order issued January 30, 2008, the bankruptcy court concluded that the trustee had been made a party "in name" to the adversary proceeding prior to its dismissal, but that no summons had been served, the trustee had not filed an answer, and no default judgment had been taken. The bankruptcy court reasoned, therefore, that the October 24, 2007, judgment was not binding on the trustee. The bankruptcy court stated that Di Ferrante was free to litigate with the trustee regarding the Kemah property in future proceedings.

Di Ferrante filed another adversary proceeding on February 22, 2008, naming the trustee and seeking to have the Kemah property removed from the Youngs' bankruptcy estates and restored to the company controlled by their daughter. In that proceeding, which this appeal does not include, the bankruptcy court held that the fraudulent transfer claim was extinguished by the operation of Texas law[13] on November 23, 2007, which was the date four

---

[13] *See* TEX. BUS. & COMM. CODE § 24.010(a)(2).

No. 09-41199

years after the transfer of the property.  The bankruptcy court therefore held that Di Ferrante's claim against the trustee was time-barred.

To recap, when Di Ferrante's adversary proceeding No. 06-3195 was dismissed on October 24, 2007, Di Ferrante's claim against the trustee had not yet been extinguished under Texas law.  However, there was no indication from the bankruptcy court at that point in time that Di Ferrante's efforts to join the trustee as a party in No. 06-3195 had been unsuccessful.  It was only after the claim was extinguished that the bankruptcy court expressly concluded that the trustee had not been properly joined.

However, because of our disposition of the propriety of the dismissal of Di Ferrante's adversary claim, we will assume, without deciding, that the dismissal was not tantamount to a dismissal after limitations had run.[14]  We will further assume, without deciding, that the trustee was never made a party to adversary proceeding No. 06-3195, the bankruptcy court's August 2007 order contemplated that the trustee would be served with a summons within 30 days, and the bankruptcy court's dismissal of that adversary proceeding occurred due to Di Ferrante's failure to serve the trustee with a summons.

The bankruptcy court cited 11 U.S.C. § 105 as its authority for the dismissal.  To the extent that the bankruptcy court based its dismissal of the adversary proceeding on equitable principles, we recognize that Section 105(a) of Title 11 permits the bankruptcy court to exercise broad authority.[15]  We also

---

[14] *See Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325-26 (5th Cir. 2008) (applying a heightened standard of review to a district court's dismissal of claims when the statute of limitations barred future litigation).

[15] *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374-75 (2007) (interpreting § 105(a) as adequate to authorize denial of a motion to convert, even though another section of the Code seemed to expressly and automatically authorize such a conversion); *Jacobsen v. Moser* (*In re Jacobsen*), 609 F.3d 647, 660-61 (5th Cir. 2010) (applying the reasoning of *Marrama* in holding that § 105(a) gave a bankruptcy court the authority to deny a motion for dismissal, when a different provision of the Code seemed to guarantee a debtor an absolute right to dismissal).

10

recognize the bankruptcy court's general powers of equity.[16]  But the authority granted under is not without limits: "the powers granted . . . must be exercised in a manner that is consistent with the Bankruptcy Code."[17]  "The 'statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'"[18]

We have held that "a dismissal under [FRCP] 41(b)[19] for failure to comply with an order of the district court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice."[20]  The record reveals no evidence of delay or contumacious conduct on Di Ferrante's part in pursuing the adversary proceeding.  There is also no evidence that the bankruptcy court imposed lesser sanctions on Di Ferrante before it dismissed his adversary proceeding.

The bankruptcy court's final order does not provide Di Ferrante with the relief he might have received had he been permitted to prosecute the fraudulent transfer claims against the trustee.  The final order gives him judgment creditor status, with a lien on the Kemah property.  But his claim has a lower priority

---

[16] *See Chiasson v. J. Louis Matherne & Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1333 (5th Cir. 1993).

[17] *Id.* at 1334.

[18] *Id.* (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

[19] *See* FED. R. BANKR. P. 7041 (applying FRCP 41, with a slight modification not relevant here, to adversary proceedings).

[20] *Wrenn v. Am. Cast Iron Pipe Co.*, 575 F.2d 544, 546 (5th Cir. 1978) (comparing cases in which dismissal was inappropriate with cases in which it was appropriate); *see also Graham v. Wood* (*In re Wood*), 199 F. App'x 328, 329 (5th Cir. 2006) (unpublished) (concluding that the bankruptcy court had abused its discretion in dismissing a complaint objecting to the discharge of debt because there was no "clear record of delay or contumacious conduct" and "the record [did] not show either that the court determined that lesser sanctions would not prompt diligent prosecution or that it employed lesser sanctions which proved to be futile").

No. 09-41199

than both the tax liens and the administrative expenses of the estate trustee. The resolution of the fraudulent transfer claim in Di Ferrante's favor, on the other hand, would mean that the Kemah property was not part of the Youngs' estate, and would therefore not be subject to either the tax liens or administration expenses. The dismissal of the bankruptcy proceedings and, with them, Di Ferrante's adversary claim, did not take into account the parties' best interests.[21]

The provisions of the October 2007 final order dismissing the bankruptcy proceedings and the adversary proceeding in No. 06-3195 were therefore an abuse of the bankruptcy court's discretion.

**IV**

Di Ferrante also argues that the bankruptcy court exceeded its authority in ordering the release of funds that the Youngs had deposited with the court to protect against deterioration in the value of the Kemah property. The court made no findings as to the owner of the funds, but ordered them released to Donald Young and two non-debtors—his son and his son's company. Di Ferrante contends that the funds were presumptively estate assets and that they could not be distributed to non-debtors without factual and legal analysis concerning ownership.

Before we reach the merits of this claim, we must consider whether Di Ferrante has standing to assert it. Only a "person aggrieved" by the order of a bankruptcy court may appeal it.[22] In order to have standing to appeal, the "appellant must show that he was directly and adversely affected pecuniarily by

---

[21] *See Schwartz v. Geltzer* (*In re Smith*), 507 F.3d 64, 72 (2d Cir. 2007) (reasoning that, in considering a debtor's motion to dismiss, the court takes into account the best interests of the parties, and "[w]ith regard to creditors, the issue is typically one of prejudice" (internal citations omitted)).

[22] *Gibbs & Bruns LLP v. Coho Energy Inc.* (*In re Coho Energy Inc.*), 395 F.3d 198, 202 (5th Cir. 2004).

the order of the bankruptcy court."[23]   Di Ferrante meets the high bar for standing to appeal the release of the funds.  The funds were deposited as a protection against the deterioration in value of the Kemah property, the transfer of which Di Ferrante disputes; thus, Di Ferrante has standing to appeal the bankruptcy court's order to release the funds from the estate.

We agree that the bankruptcy court abused its discretion in releasing the funds without making findings concerning their ownership.  The determination of whether the funds are property of a bankruptcy estate is "a legal determination which frequently entails complex analyses involving a number of legal elements and a variety of facts."[24]   Releasing these funds without such findings is not in the best interest of either the Youngs or Di Ferrante, and is therefore not consistent with the court's authority under 11 U.S.C. § 105(a).[25]

\*     \*     \*

For the reasons stated above, we VACATE the district court's order affirming the bankruptcy court's final order and REMAND to the district court with instructions to remand accordingly to the bankruptcy court for additional proceedings in accordance with this decision.

---

[23] *Id.* at 203 (quotation and citation omitted).

[24] *Brown v. Chestnut* (*In re Chestnut*), 422 F.3d 298, 303 (5th Cir. 2005).

[25] *See Schwartz*, 507 F.3d at 72 (determining whether dismissal was in the best interests of all parties).