# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 16, 2010

Lyle W. Cayce
Clerk

No. 09-40023

In the Matter of:  ROBERT EDWIN JACOBSEN,

Debtor

ROBERT EDWIN JACOBSEN,

Appellant

v.

CHRISTOPHER MOSER, Chapter 7 Trustee; JOHN SRAMEK;
BERNADETTE SRAMEK; TIMOTHY E CARLSON, CPA, a professional
corporation,

Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, BARKSDALE, and ELROD, Circuit Judges.

KING, Circuit Judge:

Robert Edwin Jacobsen filed a petition for relief under Chapter 13 of the
Bankruptcy Code.  During Jacobsen's bankruptcy case, the Chapter 13 Trustee
moved to convert the case to Chapter 7 for cause under 11 U.S.C. § 1307(c).  In
response, Jacobsen moved to dismiss his case under 11 U.S.C. § 1307(b).

No. 09-40023

Following a hearing, the bankruptcy court found that Jacobsen had acted in bad faith and abused the bankruptcy process, denied his motion to dismiss, and converted the case to Chapter 7. Jacobsen appeals, asserting that he has an absolute right to dismiss under § 1307(b) and, alternatively, that the finding of bad faith was clearly erroneous. Although the plain language of 11 U.S.C. § 1307(b) can be read to confer an absolute right to dismiss, the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), compels us to hold that the right to dismiss under 11 U.S.C. § 1307(b) is subject to a limited exception for bad-faith conduct or abuse of the bankruptcy process, and we therefore affirm.

## I. BACKGROUND

Robert Edwin Jacobsen is a licensed real estate broker in the State of California. He married his wife, Alise Malikyar, in 1999. At the time this appeal was filed, Malikyar worked as a hair stylist in California. Jacobsen filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on May 25, 2007, in the Bankruptcy Court for the Eastern District of Texas. Although a pending lawsuit had been filed in California state court against both Jacobsen and Malikyar by John and Bernadette Sramek (collectively, the "Srameks"), Malikyar did not file a petition for bankruptcy relief as a co-debtor.[1]

After obtaining an extension of time, Jacobsen filed his required bankruptcy schedules and Statement of Financial Affairs on June 25, 2007. In his schedules, Jacobsen disclosed his ownership of three mortgaged properties: a residence in Frisco, Texas, in which he claimed a homestead exemption, and two leased residential properties in Plano, Texas.[2] Jacobsen also claimed

---

[1] The Srameks' lawsuit alleged fraud and misrepresentation in connection with a real estate transaction in California.

[2] Jacobsen proposed to assume the unexpired leases of the two residences in Plano.

2

ownership of various other items of personal property, including all the stock of Humbolt Equities LLC, valued at $1,000, and a promissory note owed by REJ Properties, Inc., with a face value of $1,000,000. Jacobsen listed eight secured claims totaling $613,717.54, including two judgment liens: a $35,000 claim by Cory Nichols and a $47,530 claim by Timothy E. Carlson, CPA, PC ("Carlson"). Jacobsen did not identify any property to which the judgment liens attached. Jacobsen also listed unsecured claims totaling $224,711.80 that were noncontingent, liquidated, and undisputed. He listed the Srameks individually as pursuing a civil lawsuit against him for $1,627,536.38; Jacobsen marked this claim as contingent, unliquidated, and disputed.[3]

In his Statement of Financial Affairs, Jacobsen listed under the category "Other transfers" the sale, on September 15, 2006, of the outstanding shares of the British American Yacht Corporation ("British American"). He claimed that the sale was for a total consideration of $5,000, of which his share was $2,500. No other transactions were listed. Under "Prior address of debtor," Jacobsen listed the address 2324 Tice Valley Blvd., Walnut Creek, CA 94595 (the "Tice Valley Property"). Jacobsen reported that he lived at the Tice Valley Property from 1999 until the end of 2005, at which time he lived on a sailboat in the Caribbean for approximately six months. In describing his business activities, Jacobsen reported four business interests: (1) his self-employment as a real estate investor and broker; (2) Humble [sic] Equities II, LLC, a real estate business of which Jacobsen was the sole member; (3) REJ Properties, Inc., a real estate business of which Jacobsen was the president and sole shareholder until the corporation's sale in May 2005; and (4) British American, a yacht charter business he ran with his wife. In the section for listing spouses and former

---

[3] That claim was the subject of our decision in *Jacobsen v. Sramek* (*In re Jacobsen*), No. 09-40660, 2010 WL 271419 (5th Cir. Jan. 25, 2010) (per curiam), affirming the bankruptcy court's decision to overrule Jacobsen's objections to the Srameks' proof of claim.

spouses, Jacobsen misspelled Malikyar's name as "Malekyar"; this was the first time her name appeared on any filings in the Chapter 13 case.

On July 20, 2007, Jacobsen, the Srameks, Carlson, and the Chapter 13 Trustee attended the meeting of creditors prescribed by 11 U.S.C. § 341. At this meeting, it was revealed that there were numerous real properties in both Texas and California titled in Malikyar's name and that the Tice Valley Property was proceeding to sale. The Chapter 13 Trustee responded by filing an adversary proceeding to enjoin the sale (the "Adversary Proceeding"). At a hearing in the Adversary Proceeding, Jacobsen disclosed that he had a nonexempt property interest in the Tice Valley Property. The bankruptcy court subsequently entered an order restraining the sale of the Tice Valley Property.

While the Adversary Proceeding was progressing, the Chapter 13 case continued. On August 2, 2007, the Chapter 13 Trustee filed a motion to convert the case from Chapter 13 to Chapter 7 for cause under § 1307(c); the Srameks and Carlson joined in that motion. Later that day, Jacobsen responded by filing a motion to dismiss the Chapter 13 case under § 1307(b). The bankruptcy court held a hearing on the motions at which Jacobsen was the sole witness testifying.

During Jacobsen's examination at the hearing, it became clear that Jacobsen's schedules and his Statement of Financial Affairs contained inaccuracies and deficiencies. Regarding real property, Jacobsen testified that in the weeks leading up to his petition, a home in Lafayette, California (the "Bella Vista Property") had been purchased and titled in Malikyar's name. He further testified that about two weeks before filing his petition, he had executed a quitclaim deed, conveying any interest he had in the Bella Vista Property to Malikyar. Neither the Bella Vista Property nor the quitclaim deed was identified in Jacobsen's schedules or his Statement of Financial Affairs. At the time of the hearing, Jacobsen was living with Malikyar at the Bella Vista Property. In addition, the Tice Valley Property, although listed as a prior

address on the Statement of Financial Affairs, was not listed in Jacobsen's schedules. While Jacobsen included three Texas properties in his schedules, he omitted six rental properties in Allen and Plano, Texas, that were titled in Malikyar's name.

Jacobsen explained in testimony that he neglected to include property held in Malikyar's name because he believed that, under a prenuptial agreement and a postnuptial agreement the two had executed, those properties were separately owned by Malikyar. These agreements, dated July 17, 1999, and September 11, 2001, respectively, purport to leave all property acquired before marriage as separate property and to render property acquired during marriage the separate property of the spouse in whose name it was acquired. Jacobsen acknowledged in his testimony that these agreements were not recorded in the relevant counties in California or Texas.[4] He was also unable to explain why, at the earlier hearing in the Adversary Proceeding regarding the sale of the Tice Valley Property, neither he nor his attorney mentioned or produced either the prenuptial or postnuptial agreement.

Jacobsen suggested that Malikyar was able to purchase the Bella Vista Property using income derived from her hair styling business, but he then testified that she had not been engaged in that business until after the date his petition was filed. Jacobsen also testified that Malikyar, who is from Afghanistan, speaks little English, and that he manages the properties titled in her name. Jacobsen's testimony also revealed that he was the beneficiary and trustee of a trust called the Jacobsen Trust, but he did not believe that the trust held any assets. Jacobsen testified that he had invested $75,000 in a business venture with his cousin who lived in Oslo, Norway, to produce shea butter; his

---

[4] Both California and Texas require that marital property agreements be recorded to be effective against third parties without notice. *See* CAL. FAM. CODE § 852(b) (West 2004); TEX. FAM. CODE § 4.106(b) (Vernon 2006).

No. 09-40023

investment money was derived from the proceeds from the sale of a condominium he owned in Acapulco, Mexico. Neither of those interests was listed on Jacobsen's schedules. Jacobsen insisted that the misspelling of his wife's name was unintentional, as was the misspelling of Humbolt Equities on his Statement of Financial Affairs.[5] Despite the errors and omissions, Jacobsen did not amend his schedules or his Statement of Financial Affairs.

Following the hearing, the bankruptcy court denied Jacobsen's motion to dismiss and granted the Chapter 13 Trustee's motion to convert. *In re Jacobsen*, 378 B.R. 805, 811 (Bankr. E.D. Tex. 2007). The court found that Jacobsen's right to dismiss the Chapter 13 case was qualified by an exception for bad faith, *id.* at 810–11, that Jacobsen's conduct established bad faith, *id.* at 811, and that Jacobsen's bad faith constituted cause for converting the case to Chapter 7, *id.* While the case was on appeal to the district court, the bankruptcy court entered a judgment in the Adversary Proceeding, agreed to by Jacobsen and Malikyar, declaring that the three properties listed in Jacobsen's schedules and seven properties held in Malikyar's name were equal or joint management community property and therefore property of Jacobsen's bankruptcy estate. The district court affirmed the judgment of the bankruptcy court converting Jacobsen's case to Chapter 7. Jacobsen timely appealed.[6]

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 158(d) over the appeal of an order converting a bankruptcy case from Chapter 13 to Chapter 7 for cause under § 1307(c). *Rosson v. Fitzgerald* (*In re Rosson*), 545 F.3d 764, 770 (9th Cir. 2008);

---

[5] According to Jacobsen, the only assets held by Humbolt Equities are five unimproved lots in Lake Tahoe, California, with a total value of approximately $1,000.

[6] Subsequent to this appeal being taken, the bankruptcy court sanctioned Jacobsen for his conduct throughout the case. *See In re Jacobsen*, No. 07-41092, 2009 WL 3245418, at *16 (Bankr. E.D. Tex. Sept. 30, 2009). That action does not influence our decision here.

No. 09-40023

*Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218, 219 (8th Cir. 1996).

"When a court of appeals reviews the decision of a district court, sitting as an appellate court, it applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Kennedy v. Mindprint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009) (alterations and internal quotation marks omitted). "Issues of statutory interpretation are [questions of law] reviewed de novo." *Szwak v. Earwood* (*In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*), 592 F.3d 664, 668 (5th Cir. 2009). A bankruptcy court's determination that a debtor has acted in bad faith is a finding of fact reviewed for clear error. *See Humble Place Joint Venture v. Fory* (*In re Humble Place Joint Venture*), 936 F.2d 814, 816 (5th Cir. 1991) (citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068 (5th Cir. 1986)). The decision to convert a Chapter 13 case to Chapter 7 under § 1307(c) is reviewed for abuse of discretion. *In re McDonald*, 118 F.3d 568, 569 (7th Cir. 1997).

### III. DISCUSSION

Jacobsen argues on appeal that the bankruptcy court lacked the authority to order conversion to Chapter 7 under § 1307(c) in light of his motion to dismiss under § 1307(b). He contends in the alternative that the bankruptcy court's finding of bad faith was clearly erroneous and cannot support conversion under § 1307(c).

#### A.    Section 1307

The question of whether there is an exception to a debtor's right to dismiss under § 1307(b) for bad-faith conduct or abuse of process is an issue of first impression in this circuit.[7] Before we undertake an independent analysis, we

---

[7] In an earlier case, the district court affirmed a bankruptcy court denial of a Chapter 12 debtor's request for dismissal under 11 U.S.C. § 1208(b) and grant of a creditor's motion to convert the case to Chapter 7. *Foster v. N. Tex. Prod. Credit Ass'n* (*In re Foster*), 121 B.R. 961,

No. 09-40023

first survey the approaches taken by other courts, examine the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), and evaluate how courts have changed their analysis in response to *Marrama.*

### 1.    Statutory Framework

Section 1307(b) provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.  Any waiver of the right to dismiss under this subsection is unenforceable."   11 U.S.C. § 1307(b).   The next subsection provides that:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

*Id.* § 1307(c).  Section 1307(c) then provides a nonexhaustive list of acts and omissions that constitute "cause," none of which is directly applicable here.

### 2.    Circuit Split

For many years, the courts have been divided over whether a debtor's right to dismiss under § 1307(b) was absolute or was qualified by an exception for bad faith or abuse of process.  The Ninth Circuit initially suggested in dicta that the right to dismiss was absolute, *see Nash v. Kester* (*In re Nash*), 765 F.2d 1410, 1413 (9th Cir. 1985) (noting, outside the context of bad faith, that the right to dismiss under § 1307(b) is absolute); *see also In re Rosson*, 545 F.3d at 772 n.9 (suggesting that the language in *In re Nash* was "likely dicta"), and its bankruptcy appellate panel (BAP) agreed, *see Beatty v. Traub* (*In re Beatty*), 162 B.R. 853, 857 (B.A.P. 9th Cir. 1994) ("[A] court must dismiss the case upon the

---

961 (N.D. Tex. 1990), *aff'd without op.*, 945 F.2d 400 (5th Cir. 1991).  Our affirmance under Fifth Circuit Rule 47.6 is discussed below.

debtor's request for dismissal under section 1307(b) if that request is made prior to the effective time of an order converting the case to Chapter 7."). Other courts took this view as well. *See In re Harper–Elder*, 184 B.R. 403, 404–05 (Bankr. D.D.C. 1995) (citing cases on both sides of the division and concluding that the right to dismiss under § 1307(b) is absolute). These courts reasoned that the plain text of the statute did not permit a contrary conclusion, *see, e.g.*, *id.* at 405–06, and that an exception should not be implied where the debtor was merely forgoing the protections of the Bankruptcy Code, *see, e.g.*, *id.* at 407. These courts also considered the voluntary nature of Chapter 13 bankruptcy and concluded that an absolute right to dismiss was consonant with the principle that a debtor cannot be compelled to commit post-petition earnings to complete a confirmed repayment plan. *See, e.g.*, *id.* at 408; *see also In re Armstrong*, 408 B.R. 559, 571 (Bankr. E.D.N.Y. 2009) (discussing post-petition earnings and voluntariness).

Other courts, however, disagreed and held that § 1307(b) is subject to an exception where a Chapter 13 debtor acts in bad faith or abuses the bankruptcy process. The most significant of these decisions was that of the Eighth Circuit in *Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218 (8th Cir. 1996). The court considered its prior decision in *Graven v. Fink* (*In re Graven*), 936 F.2d 378 (8th Cir. 1991), which held that the analogous provisions in Chapter 12—11 U.S.C. § 1208(b) and (d)—conferred a right to dismiss that was qualified by an exception where the debtor committed fraud.[8] The *In re Graven* court read

---

[8] Section 1208 provides, in relevant part:
(b) On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
. . . .
(d) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has

No. 09-40023

§ 1208(b) as providing a qualified right to dismiss so as not to render § 1208(d) "useless" and because the broad purpose of the Bankruptcy Code was served by an interpretation that permitted conversion even in the face of a request for dismissal. 936 F.2d at 385. The *In re Graven* court also considered the district court's opinion in *Foster v. North Texas Production Credit Association*, 121 B.R. 961 (N.D. Tex. 1990), which concluded that the right to dismiss under § 1208(b) is qualified by an exception for fraud.[9] 936 F.2d at 386. According to the *In re Molitor* court, "th[e] same broad purpose as well as the principles of statutory construction employed in *Graven* apply equally well to the nearly identical provisions of Chapter 13 and the instant case." 76 F.3d at 220. The court refused to allow the debtor to use § 1307(b) as an "escape hatch" from the charges of bad faith because doing so "would render section 1307(c) a dead letter

---

committed fraud in connection with the case.

11 U.S.C. § 1208(b) & (d). Section 1208(c) differs from § 1307(c) in that it permits dismissal but not conversion upon a finding of cause, while § 1307(c) permits either upon a finding of cause. Chapter 12 thus requires a finding of fraud to justify conversion to Chapter 7, while Chapter 13 requires only a finding of cause.

[9] Subsequent to the court's decision in *In re Graven*, we affirmed the district court's decision in *In re Foster* without opinion. *In re Foster*, 945 F.2d 400. That decision was made pursuant to Fifth Circuit Rule 47.6, which provides:

> **Affirmance Without Opinion.** The judgment or order may be affirmed or enforced without opinion when the court determines that an opinion would have no precedential value and that any one or more of the following circumstances exists and is dispositive of a matter submitted for decision: (1) that a judgment of the district court is based on findings of fact that are not clearly erroneous; (2) that the evidence in support of a jury verdict is not insufficient; (3) that the order of an administrative agency is supported by substantial evidence on the record as a whole; (4) in the case of a summary judgment, that no genuine issue of material fact has been properly raised by the appellant; and (5) no reversible error of law appears. In such case, the court may, in its discretion, enter either of the following orders: "AFFIRMED. *See* 5TH CIR. R. 47.6." or "ENFORCED. *See* 5TH CIR. R. 47.6."

5TH CIR. R. 47.6. While our determination in *In re Foster* is without precedential value, we remain mindful that Rule 47.6 decisions are reached only after all the issues are fully considered and ruled on in a meaningful review process. *United States v. Pajooh*, 143 F.3d 203, 204 (5th Cir. 1998).

10

and open up the bankruptcy courts to a myriad of potential abuses." *Id.*

After *In re Molitor*, the Second Circuit also had the occasion to determine whether § 1307(b) was subject to an exception for bad-faith conduct or abuse of process. In *Barbieri v. RAJ Acquisition Corp.* (*In re Barbieri*), 199 F.3d 616, 619 (2d Cir. 1999), the Second Circuit became the first court of appeals to hold that no such exception existed. The court began by considering the plain text of § 1307(b), which uses the words "at any time" and "the court shall dismiss," and comparing them to the permissive language in § 1307(c), in which "the court may convert . . . for cause." *Id.* at 619–20. The court concluded that the mandatory terms of § 1307(b) were reinforced by the principle that Chapter 13 bankruptcy is intended to be purely voluntary. *Id.* at 620. The court stated that the debtor could still be forced into a Chapter 7 liquidation if the requirements of commencing an involuntary petition under 11 U.S.C. § 303 were met. *Id.* The court rejected the Eighth Circuit's concern that an interpretation affording debtors an absolute right to dismiss would read § 1307(c) out of the statute. *Id.* The court further determined that the equitable powers provided a bankruptcy court under 11 U.S.C. § 105(a)[10] could not be used to disregard the plain language of the statute. *Id.* at 620–21. Lastly, the court explained that dismissal would not result in abuse of the bankruptcy process because the automatic stay would be lifted and creditors would be free to use state court

---

[10] Section 105(a) provides:
    The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

No. 09-40023

processes. *Id.* at 621.[11]

### 3.    *Marrama v. Citizens Bank of Massachusetts*

In 2007, the Supreme Court handed down its decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). Marrama, the Chapter 7 debtor in that case, had filed schedules that were "misleading" and "inaccurate"—listing the value of a trust as zero when the trust actually held a house of substantial value and denying that he had transferred the house to the trust in the year prior to the date of his petition. *Id.* at 368. When the trustee declared an intention to recover the house as an asset of the estate, Marrama sought to convert his case to Chapter 13 pursuant to 11 U.S.C. § 706(a). *Id.* at 368–69. That provision states that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a). That provision is subject to the limitation that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *Id.* § 706(d).

In determining whether § 706(a) was subject to an exception for bad faith, the Court first addressed the provision's legislative history. The Senate Report stated that

---

[11] Following these decisions, commentators weighed in, with some offering opinions on the proper interpretation and others simply summarizing the decisions courts had reached. *See* 8 COLLIER ON BANKRUPTCY ¶ 1307.03[1] (15th ed. rev. 2007) ("Although some courts have . . . granted motions to convert a case notwithstanding a debtor's motion to dismiss in cases in which the court has found abuse, such decisions fly in the face of the plain language of the statute." (footnote omitted)); 7 NORTON BANKRUPTCY LAW AND PRACTICE § 148:4 (3d ed. 2008) ("Courts have been especially loath to grant a debtor's motion to voluntarily dismiss a Chapter 13 case when the motion is filed in response to a creditor's or the trustee's motion to convert."); Christy McDonald, *To Dismiss or not to Dismiss: The "Absolute" Question: Think Dismissing a Chapter 13 Is an Absolute Right?  Think Again*, N.J.L.J., vol. CLXVII, No. 5, Feb. 4, 2002 (noting the conflicting textual and policy arguments for and against a bad-faith exception to § 1307(b)).

> [s]ubsection (a) of [§ 706] gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from Chapter 11 or 13 to Chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.

S. REP. NO. 95-989, at 94 (1978). The *Marrama* Court, however, found that the "reference to an 'absolute right' of conversion [wa]s more equivocal than" suggested. 549 U.S. at 372. The Court identified two specific limitations to the "absolute right" of conversion: (1) the proviso in § 706(a) that the right does not survive a previous conversion to Chapter 7 and (2) the requirement in § 706(d) that the debtor be eligible to proceed under the chapter to which conversion was sought. *Id.* The Court then suggested that there were two potential reasons why Marrama would not qualify as a debtor under Chapter 13. *Id.* The first arose from the debt limitations imposed on Chapter 13 debtors by 11 U.S.C. § 109(e), but the Court did not discuss that possibility in any detail. *Id.* at 372–73. Instead, the Court examined the second potential reason: the ability of a bankruptcy court to dismiss or convert a case for cause under § 1307(c). *Id.* at 373.

In its discussion of § 1307(c), the *Marrama* Court noted that pre-petition bad-faith conduct by debtors such as Marrama constituted "cause" for bankruptcy courts to invoke § 1307(c). *Id.* Individuals engaged in such conduct, the Court reasoned, did not belong to "the class of 'honest but unfortunate debtors' that the bankruptcy laws were enacted to protect." *Id.* at 364 (alterations omitted) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). The Court considered a finding of bad-faith conduct sufficient to invoke § 1307(c) "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373–74. Accordingly, the Court found that § 706(d)—and its requirement that a debtor be eligible under the chapter to which conversion was

sought—justified the bankruptcy court in denying conversion to Chapter 13 in the first instance. *Id.* at 374.

The Court next addressed the language rendering waiver of the statutory rights unenforceable:

> A statutory provision protecting a borrower from waiver is not a shield against forfeiture. Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Id.* at 374–75 (footnotes omitted). Finally, the Court noted that "the inherent power of every federal court to sanction abusive litigation practices might well provide an adequate justification for a prompt, rather than a delayed, ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13." *Id.* at 375–76 (citation and internal quotations marks omitted).

### 4.    Post-*Marrama* Decisions

The effect of the *Marrama* decision on § 1307(b) has been the focus of numerous bankruptcy court opinions. Within our circuit, two post-*Marrama* bankruptcy courts have arrived at opposite results regarding the existence of a bad-faith exception to § 1307(b). *Compare In re Polly*, 392 B.R. 236, 246–48 (Bankr. N.D. Tex. 2008) (distinguishing *Marrama* and concluding that the Chapter 13 debtor possessed an absolute right to dismiss) *with In re Jacobsen*, 378 B.R. at 810–11 (reaching the opposite conclusion).[12] Beyond the borders of

---

[12] As the *In re Polly* court noted, "courts in the Fifth Circuit have almost uniformly adopted th[e] view" "that, in the face of a motion to convert under section 1307(c), the right of

No. 09-40023

our circuit, the lower courts have been similarly divided.[13]

In addition to decisions by bankruptcy courts, the Ninth Circuit considered the effects of *Marrama* in its 2008 decision of *In re Rosson*, 545 F.3d 764. Rosson, the Chapter 13 debtor, had been ordered by the bankruptcy court to deliver the proceeds from an arbitration award to the Chapter 13 Trustee. *Id.* at 768. When Rosson failed to do so, the bankruptcy court chose to sua sponte convert the case to Chapter 7. After that decision but before a formal conversion order had been filed, Rosson sought to dismiss his case under § 1307(b). *Id.* When the bankruptcy court denied Rosson's request and converted to Chapter 7, Rosson appealed, citing *In re Beatty*, 162 B.R. 853, a decision by the BAP for the Ninth Circuit holding that the right to dismiss under § 1307(b) is absolute. *Id.* at 768–79.

---

a debtor to dismiss under section 1307(b) is not absolute." 392 B.R. at 241 (citing *In re Foster*, 945 F.2d 400; *In re Cobb*, No. 99–3193, 2000 WL 17840 (E.D. La. Jan. 11, 2000); *In re Jacobsen*, 378 B.R. 805; *In re Fonke*, 310 B.R. 809 (Bankr. S.D. Tex. 2004); *In re Crowell*, 292 B.R. 541 (Bankr. E.D. Tex. 2002)).

[13] In addition to *In re Polly*, we have identified five post-*Marrama* decisions that either hold or suggest that the right to dismiss is absolute. *See In re Hamlin*, No. 09-5272-8, 2010 WL 749809, at *4 (Bankr. E.D.N.C. Mar. 1, 2010); *In re Sickel*, No. 08-00309, 2008 WL 5076981, at *1 (Bankr. D.D.C. Sept. 26, 2008); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *4 (Bankr. N.D. W. Va. Dec. 18, 2007); *In re Hughes*, No. 04-40725, 2007 WL 7025843, at *3 (Bankr. S.D. Ga. Nov. 30, 2007); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 (Bankr. M.D. Fla. May 16, 2007). In addition to *In re Jacobsen*, we have located the following post-*Marrama* lower court decisions holding that the right to dismiss is qualified by an exception for bad faith or abuse of process. *See In re Caola*, 422 B.R. 13, 20 (Bankr. D.N.J. 2010); *In re Armstrong*, 408 B.R. 559, 560 (Bankr. E.D.N.Y. 2009); *In re Norsworthy*, No. 05-15098, 2009 Bankr. LEXIS 1381, at *3–4 (Bankr. N.D. Ga. May 27, 2009); *In re Chabot*, 411 B.R. 685, 700 (Bankr. D. Mont. 2009); *In re Letterese*, 397 B.R. 507, 512 (Bankr. S.D. Fla. 2008); *see also Sasso v. Boyajian* (*In re Sasso*), 409 B.R. 251, 254 (B.A.P. 1st Cir. 2009) (dismissing as moot an appeal from the bankruptcy court's order denying a Chapter 13 debtor's request for dismissal where the debtor did not appeal the later order converting the case to Chapter 7); *In re Brandford*, 386 B.R. 742, 750 (Bankr. N.D. Ind. 2008) ("[Section] 1307(b) is a statement of a debtor's absolute right to dismiss a Chapter 13 case, perhaps only subject to potential conversion of the case to a Chapter 7 in the event of commission of fraud during . . . the Chapter 13 case, an issue not . . . presented in this record."). Many of the decisions in the latter category were informed by the Ninth Circuit's decision in *In re Rosson*, which we discuss next.

After briefly surveying the legal landscape, the Ninth Circuit began its analysis with a discussion of the effect of *Marrama* on bankruptcy decisions within its boundaries. *Id.* at 771–72. The court noted that its BAP, in *Croston v. Davis* (*In re Croston*), 313 B.R. 447, 450 (B.A.P. 9th Cir. 2004), had earlier considered the same issue decided in *Marrama*—whether § 706(a) provides an absolute right to convert to Chapter 13—and reached the opposite conclusion. *Id.* at 772–73. The BAP in *In re Croston* relied on its earlier decision in *In re Beatty*, which held that a Chapter 13 debtor's right to dismiss under § 1307(b) is absolute, in concluding that the right to convert under § 706(a) was also absolute. *See In re Croston*, 313 B.R. at 451 ("*Beatty* compels us to conclude that the § 706(a) right to convert to chapter 13 is effectively absolute in the same manner as the corollary dismissal right under § 1307(b)."). The Ninth Circuit discussed the obvious effect the *Marrama* decision had on *In re Croston*: "There is no doubt that after *Marrama*, *Croston* is no longer good law. *Marrama* expressly cited *Croston* as one of the cases recognizing a debtor's absolute right to convert a Chapter 7 case to Chapter 13—an approach that the Court then rejected." *In re Rosson*, 545 F.3d at 773 (citing *Marrama*, 549 U.S. at 368 n.2, 373–76).

The *In re Rosson* court next considered whether *Marrama* also affected the BAP's decision in *In re Beatty*. The court had little difficulty concluding that it did:

> [A]lthough *Marrama* did not address the exact issue decided in *Beatty*, it is clear that, after *Marrama*, *Beatty* too is no longer good law, insofar as it holds that a Chapter 13 debtor has an absolute right to dismiss under § 1307(b). As noted above, *Croston* was at pains to explain that there was no analytical distinction between the legal issue in that case and the issue in *Beatty*. *See Croston*, 313 B.R. at 451–52. We agree, and accordingly we conclude that the Court's rejection of the "absolute right" theory as to § 706(a) applies equally to § 1307(b). Therefore, in light of *Marrama*, we hold that the debtor's right of voluntary dismissal under § 1307(b) is not

16

> absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or "to prevent an abuse of process." 11 U.S.C. § 105(a). *See Jacobsen*, 378 B.R. at 811 (reaching same conclusion). *But see In re Polly*, 392 B.R. [at] 236 . . . (holding that right to voluntarily dismiss Chapter 13 case is "absolute" (distinguishing *Marrama*)).

*Id*. at 773–74 (footnote omitted). The court rejected the suggested distinction between § 706(a) and § 1307(b)—the former stating that "[t]he debtor may convert" and the latter that "the court shall dismiss"—by noting that "the important point established by *Marrama* is that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Id*. at 773 n.12.

Subsequent to the decision in *In re Rosson*, the Bankruptcy Court for the Eastern District of New York considered the continued validity of the Second Circuit's decision in *In re Barbieri*. *See In re Armstrong*, 408 B.R. 559. The court concluded that "in light of *Marrama* . . . , the Second Circuit's decision in *Barbieri* has been abrogated[,] and a debtor does not have an absolute right to dismiss a chapter 13 case when there is a finding by the Court of bad faith conduct by the debtor during the bankruptcy case." *Id*. at 560. The *In re Armstrong* court then undertook to "explain[ ] independently why the reasoning in *Marrama* should be extended to section 1307(b) dismissals." *Id*. at 569. The court first considered § 105(a), which the Second Circuit had found could not apply in light of the text of § 1307(b), *see In re Barbieri*, 199 F.3d at 620–21, and concluded that the *Marrama* "Court took a much more expansive view . . . and recognized the bankruptcy courts' need to exercise their inherent authority and their authority under section 105(a) to prevent abuse of the bankruptcy process." *In re Armstrong*, 408 B.R. at 570.

The *In re Armstrong* court next considered the legislative history and the argument that Chapter 13 is a purely voluntary chapter. *Id*. The court noted

first that the *Marrama* Court "rejected the argument that a debtor has an 'absolute right' to convert from chapter 7 to chapter 13 under section 706(a), despite a Senate Committee Report stating that a debtor has 'the one-time absolute right of conversion' under section 706(a)" by finding the report "'equivocal.'" *Id.* The court then quoted a report from the House Judiciary Committee stating that Chapter 13 was intended to be purely voluntary due to the Thirteenth Amendment's prohibition on involuntary servitude and the difficulty of forcing an unwilling debtor to comply with a repayment plan. *Id.* The court agreed that the legislative history revealed "that a debtor cannot be placed into chapter 13 involuntarily [or] be compelled to remain in chapter 13 involuntarily," but declined to extend those proscriptions "to support the notion that a chapter 13 debtor can abuse the bankruptcy process and *not* be held accountable." *Id.* at 570–71. The court found that concerns of involuntary servitude were inapplicable where the debtor would not be forced to remain in Chapter 13 but would instead be placed into Chapter 7 "because in a chapter 7 a debtor does not commit post-petition wages to repay creditors." *Id.* at 571.

According to the *In re Armstrong* court, an exception to § 1307(b) for bad faith also drew support in the anti-waiver language present in §§ 706(a), 1307(b), and 1307(c), each of which provides that the waiver of the right provided under that subsection is unenforceable. *Id.* The *Marrama* Court found that "[a] statutory provision protecting a borrower from waiver is not a shield against forfeiture," and determined that bankruptcy courts retained the authority under § 706 and § 1307(c) "to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Marrama*, 549 U.S. at 374–75. In construing this express reference to § 1307(c) and its anti-waiver provision, the *In re Armstrong* court concluded that the presence of "an anti-waiver provision which is generally intended to protect otherwise inviolable rights of a debtor does not

mean that those rights cannot be forfeited by the 'atypical' debtor who engages in fraudulent conduct during the bankruptcy case." *In re Armstrong*, 408 B.R. at 571. The court thus found that by the reasoning of *Marrama*, the right to dismiss under § 1307(b) was also subject to forfeiture by atypical debtors who act in bad faith.

Lastly, the *In re Armstrong* court considered two additional reasons why the *Marrama* decision supported an exception to § 1307(b) for bad-faith conduct or abuse of the bankruptcy process. *Id.* at 572. The first was the statutory language "at any time," present in both § 706(a) and § 1307(b), that the *In re Barbieri* court had relied on in construing § 1307(b) as absolute, *see* 199 F.3d at 619, but which posed no obstacle to the Supreme Court's construction of § 706(a) as qualified by a bad-faith exception, *see Marrama*, 549 U.S. at 371–74. As the *In re Armstrong* court reasoned, such language could no longer be used to support an absolute right to dismiss under § 1307(b). 408 B.R. at 572. Additionally, the *In re Armstrong* court discussed the fact that § 1307(b) is not the only mandatory provision in § 1307. *Id.* Section 1307(e) provides that when a debtor fails "to file a tax return . . . , the court *shall dismiss* a case *or convert* a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate." 11 U.S.C. § 1307(e) (emphasis added). The court found that § 1307(b) was not necessarily absolute where a separate subsection itself spoke in absolute terms in the context of holding accountable debtors who fail to abide by the rules of bankruptcy. *In re Armstrong*, 408 B.R. at 572.[14]

---

[14] The *In re Armstrong* decision deferred ruling on the request for dismissal pending an evidentiary hearing because the record was insufficient to make a determination as to bad faith and because no formal motion to convert to Chapter 7 had been filed. 408 B.R. at 572. Following that evidentiary hearing, the court found that the debtor's conduct did not constitute bad faith sufficient to establish cause to order conversion. *In re Armstrong*, 409 B.R. 629, 634–35 (Bankr. E.D.N.Y. 2009). The court also held in the alternative that if cause had been established, conversion would not have been in the best interests of the creditors and the

### 5.    Our Determination

Following the Supreme Court's decision in *Marrama*, we hold that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert.[15]   In doing so, we join the Ninth Circuit in finding that *Marrama*'s "rejection of the 'absolute right' theory as to § 706(a) applies equally to § 1307(b)" because "there is no analytical distinction" between the two statutes. *In re Rosson*, 545 F.3d at 773.  We thereby reject a construction of the statute that would afford an abusive debtor an escape hatch, and we sanction the limited exception that lower courts within our boundaries have accorded the statute for nearly two decades.

We interpret § 1307 in accordance with the Supreme Court's decision in *Marrama*.  Although possessing slight variations in wording, both § 706(a) and § 1307(b) leave the decision to convert or dismiss, respectively, to the debtor. *Compare* 11 U.S.C. § 706(a) ("The debtor may convert . . . at any time . . . .") *with id.* § 1307(b) ("On request of the debtor at any time, . . . the court shall dismiss . . . .").  The legislative history of each section reinforces the notion that the debtor's right is absolute and unqualified. *See* S. REP. NO. 95-989, at 94 (1978) ("Subsection (a) of [§ 706] gives the debtor the one-time absolute right of conversion . . . ."); *id.* at 141 ("Subsection[] (b) [of § 1307] confirm[s], without qualification, the right[] of a Chapter 13 debtor . . . to have the Chapter 13 case dismissed.").  Yet notwithstanding the apparent absoluteness of a debtor's right to dismiss under § 706(a), the Supreme Court held that the directive in the

---

estate where the only two creditors failed to appear at the evidentiary hearing. *Id.* at 635.

[15] This case does not call for us to determine whether a bankruptcy court possesses such discretion when the debtor's request for dismissal precedes the motion to convert.  We therefore leave that issue for a later case.

legislative history was "equivocal," *Marrama*, 549 U.S. at 372, and that such a right was qualified by an exception for bad-faith conduct by the debtor. *See id.* at 374.

The Court articulated two reasons why Marrama's apparently unqualified and absolute right to convert his case to Chapter 7 was subject to an exception due to his bad-faith conduct. First, the Court found that doing so was appropriate to correct the "procedural anomaly" that would occur when a bad-faith debtor exercised the right to convert under § 706(a) only to be subject to reconversion for cause under § 1307(c). *Id.* at 367–68, 373–74. The Court instead found it appropriate to avoid that two-step process that would have given Marrama control of his assets and possibly enabled action prejudicial to creditors. *Id.* at 375. Second, and more importantly, the Court spoke in clear terms that bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process' [under] § 105(a) of the Code," *id.*, and that they would have such power even in the absence of § 105(a) due to "the inherent power of every federal court to sanction 'abusive litigation practices,'" *id.* at 375–76 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). In the Court's view, this power was sufficient to negate the apparently absolute nature of Marrama's right to convert under § 706(a). *Id.* at 376.

Proceeding from the propositions in *Marrama* that an apparently unqualified right is subject to an exception for bad faith and that bad faith justifies a bankruptcy court's exercise of its powers under § 105(a), we conclude that § 1307(b) is subject to a similar exception, at least when the debtor's request for dismissal is made in response to a motion to convert under § 1307(c). We therefore decline to read § 1307(b) as an "escape hatch," *In re Molitor*, 76 F.3d at 220, from which to escape a conversion motion filed under § 1307(c).

Our decision does not run afoul of the principle that a debtor cannot be

No. 09-40023

forced involuntarily to proceed under Chapter 13. *See In re Harper–Elder*, 184 B.R. at 408 ("Chapter 13 was intended to be [a] purely voluntary chapter . . . ."). We construe § 1307(b) and (c) to permit a bankruptcy court to convert a case to Chapter 7 in lieu of dismissing the case under circumstances where the debtor has acted in bad faith or abused the bankruptcy process. We do not here read those provisions in a way that allows bankruptcy courts to force debtors to remain in Chapter 13 against their wills. Because Chapter 7 does not compel a debtor to commit post-petition earnings toward a repayment plan, the concern of involuntary servitude does not compel an alternate interpretation of § 1307(b) and (c).

We also reject the contention that *Marrama*'s reasoning does not apply outside the context of § 706 because no provision comparable to § 706(d) limits § 1307(b).[16] The Court's decision in *Marrama* was clear that bankruptcy courts are vested with the authority to take appropriate action in response to an abuse of process. *See* 549 U.S. at 375. We remain cognizant of the directive that the "equitable powers [of] bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988), and that "Section 105(a) does not permit courts to act as roving commissions to do equity," *Wells Fargo Bank of Tex. N.A. v. Sommers* (*In re Amco Ins.*), 444 F.3d 690, 695 (5th Cir. 2006) (alterations and internal quotation marks omitted). Nonetheless, we are persuaded that, under the Bankruptcy Code and Supreme Court precedent, a bankruptcy court has the power to grant an outstanding conversion motion and deny a bad-faith debtor's request for dismissal made in response to that motion.

## B.    Finding of Bad Faith

Jacobsen also challenges the bankruptcy court's factual finding that he

---

[16] Section 706(d) "reinforces section 109 by prohibiting conversion to a chapter unless the debtor is eligible to be a debtor under that chapter." S. REP. NO. 95-989, at 94.

acted in bad faith as clearly erroneous. "A finding of fact is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 367 (5th Cir. 2009). Our role is not to weigh the evidence ourselves but merely to determine whether the lower court's account "is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* "Clear error review is 'especially rigorous' when we review a lower court's assessment of trial testimony, 'because the trier of fact has seen and judged the witnesses.'" *Valley Educ. Found., Inc. v. Eldercare Props Ltd.* (*In re Eldercare Props. Ltd.*), 568 F.3d 506, 515 (5th Cir. 2009) (quoting *United States v. Casteneda*, 951 F.2d 44, 48 (5th Cir. 1992)).

After our review of the record, we are not left with a definite and firm conviction that an error has been committed. The bankruptcy court had ample evidence in the form of Jacobsen's own testimony, discussed above, revealing that Jacobsen had interests in assets that were not disclosed on his schedules and that he had made transfers that were not disclosed in his Statement of Financial Affairs. In addition, it was permissible for the bankruptcy court to conclude that the misspelling of Malikyar's name as "Malekyar" was an attempt by Jacobsen to conceal assets titled in his wife's name. Although Jacobsen spends much of his brief contending that the real properties titled in Malikyar's name were Malikyar's separate property, both he and Malikyar agreed to entry of a judgment in the Adversary Proceeding that declared those properties to be equal management community property. Furthermore, Jacobsen admitted that he was the beneficiary of the Jacobsen Trust, that he had invested $75,000 in a shea butter business, and that he had executed a quitclaim deed to the Tice Valley Property in favor of Malikyar shortly before bankruptcy. Jacobsen

acknowledged that those interests and transactions were not disclosed on his schedules or his Statement of Financial Affairs.  We also note that the bankruptcy court, sitting as the factfinder, had the ability to evaluate Jacobsen's testimony and his credibility firsthand.  We have little difficulty concluding that a finding of bad faith is plausible in light of the record viewed in its entirety.

We further hold that the bankruptcy court did not abuse its discretion in ordering conversion under § 1307(c) as being in the best interest of creditors and Jacobsen's bankruptcy estate.  The *Marrama* Court, interpreting § 1307(c)'s dismissal provision, declined to "articulate with precision what conduct qualifies as 'bad faith,'" instead noting that the debtor's conduct must be "atypical" and that bad faith occurs only in "extraordinary cases." *Marrama*, 549 U.S. at 375 n.11.  The Court found that such an extraordinary and atypical case was before it where the debtor attempted to conceal an asset by filing "misleading or inaccurate" schedules.  *Id.* at 368, 371.  Because Jacobsen filed misleading and inaccurate schedules that attempted to conceal assets from creditors, he is clearly among the class of atypical debtors subject to the limited exception to § 1307(b).  In light of Jacobsen's bad faith and the pending motion to convert to Chapter 7, we conclude that it was within the bankruptcy court's discretion to deny Jacobsen's motion to dismiss his Chapter 13 case under § 1307(b) and to order conversion under § 1307(c) instead.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the bankruptcy and district courts.

AFFIRMED.